## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DONNA M. DORSEY, ET AL.**                          **CIVIL ACTION**

**VERSUS**                                           **No.  04-0342**

**NORTHERN LIFE INSURANCE CO., ET AL.**              **SECTION: I/3**

### ORDER AND REASONS

Before the Court is a motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), filed on behalf of defendants, Northern Life Insurance Company, ING Reliastar Life Insurance Company, ING Life Insurance and Annuity Company, and ING Financial Advisors, LLC.[1]   Plaintiffs, Donna M. Dorsey, Kathleen "Bebe" Labourdette, Lily C. Miller, Joseph W. Pitts and/or Joseph W. Pitts CLU, Inc., Carlos "Chuck" Sabadie, Jr., and Tasha Nicole Galan, d/b/a United Consumers Healthcare Association, Inc. oppose the motion.[2]

Also before the Court is a motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), filed on behalf of defendants-in-counterclaim, Joseph W. Pitts and Joseph W. Pitts, CLU (collectively, "Pitts").[3]   Defendants oppose the motion.

After consideration of the motions, the legal memoranda submitted by the parties, the

_____

[1]Rec. Doc. No. 57.

[2]Rec. Doc. No. 74.

[3]Rec. Doc. No. 89.

undisputed facts and the law, for the reasons assigned, defendants' motion for judgment on the pleadings, to the extent that it seeks the entry of final judgment as to plaintiffs' claims pursuant to Fed. R. Civ. P. 54, is **DENIED.**  To the extent that defendants seek dismissal of plaintiffs' claims pursuant to the standard applicable to Fed. R. Civ. P. 12(b)(6) motions, the motion is **GRANTED IN PART AND DENIED IN PART.**  As to Pitts' motion for a judgment on the pleadings, the motion is **DENIED.**

### *BACKGROUND*

Plaintiffs are independent insurance agents licensed by the State of Louisiana.  Between 1990 and 2000, they sold insurance pursuant to separate sales agreements with Northern Life Insurance Company ("Northern Life") which, according to the complaint, is owned, operated, controlled and/or is the alter ego of named defendant ING Life Insurance and Annuity Company and/or ING Financial Advisors, LLC.[4]  A portion of the agents' clientele included public school employees to whom they marketed certain tax-deferred annuities, called section 403(b) annuities, in Orleans Parish and elsewhere.[5]  Pursuant to their contracts with Northern Life, plaintiffs allege that they were permitted to act as independent agents for other insurance and annuity companies selling similar products.[6]

Northern Life subsequently merged into its parent company, Reliastar Life Insurance Company, which is a wholly-owned subsidiary of ING.  As agents of ING, plaintiffs continued selling the same insurance products.  About the same time, ING also acquired the annuity and life insurance business of a former competitor, Aetna Life Insurance Company, which had a salaried

---

[4]*See* Rec. Doc. No. 1, Comp., ¶ 10.

[5]Sections 403(b) and 457 are the Internal Revenue Code provisions which cover pre-tax funding of teacher and governmental worker retirement accounts through the purchase of annuities.  26 U.S.C. §§ 403(b), 457.

[6]*See* Comp., ¶¶ 11-13.

sales force. Plaintiff's allege that the acquired company became reorganized under ING as ING Reliastar Life Insurance and Annuity Company ("ILIAC").[7]  As a result of the acquisition, plaintiffs allege that ING had two groups of agents – a group of independent agents, which included plaintiffs, and a group of employee agents which included the former Aetna agents.[8]

Plaintiffs allege that in conjunction with their individual insurance agency businesses, plaintiffs built up their own individual reputations and defendants' reputations in the school districts in which plaintiffs marketed and sold section 403(b) annuities.  Plaintiffs assert that as part of their business, each plaintiff developed his or her own client list which was shared with Northern Life and, subsequently, with defendants, ING Financial Advisors, LLC and ING Life Insurance and Annuity Company, in conjunction with promoting and selling Northern Life annuity and insurance products.[9]  Plaintiffs allege that ING undertook an effort to offer new section 403(b) and section 457 annuity products that would be endorsed by the American Federation of Teachers ("AFT").  According to the complaint, ING worked through the president of the Orleans Parish local chapter of the AFT in an effort to acquire section 403(b) and/or section 457 "pay slots" in the Orleans Parish school system which would allow the ILIAC employee-agents to market and sell the AFT-endorsed ING annuity products to AFT-member teachers in the Orleans Parish School system.[10]  According to the complaint, in September 2003, the Southeast regional manager of ING came to New Orleans and met with a group of ING independent agents, including some of the named plaintiffs, and

---

[7]*Id.*, ¶¶ 16-17.

[8]*Id.*, ¶ 17.

[9]*Id.*, ¶¶ 13-15.

[10]According to ING, "pay slots" refer to the financial institutions chosen by a local school district from which annuity products and mutual funds may be purchased by section 403(b) participants.

advised the agents that they would no longer be allowed to sell the ING and/or Reliastar section 403(b) plans they were selling if they utilized an AFT endorsement to procure business within the Orleans Parish school system.[11]   Plaintiffs allege that to facilitate the success of the ILIAC employee-agents, ING has provided or will provide the ILIAC employee-agents with plaintiffs' confidential customer information in an effort to misappropriate plaintiffs' clients.[12]

Plaintiffs filed this lawsuit on February 6, 2004, in the Eastern District of Louisiana, invoking this Court's diversity jurisdiction.  Plaintiffs claim that after the Aetna acquisition, ING violated several different provisions of Louisiana law when it used plaintiffs' customer lists in order to market the new AFT-endorsed annuity product through the ILIAC agents.  Plaintiffs allege claims based upon the Louisiana Unfair Trade Practices Act, La. Rev. Stat. § 51:1401-30, the Louisiana Trade Secrets Act, La. Rev. Stat. § 51:1431-39, La. Civ. Code art. 2315, unjust enrichment pursuant to La. Civ. Code art. 2298, detrimental reliance, breach of contract, fraudulent and/or negligent misrepresentation in violation of Louisiana law, and tortious interference with contract in violation of Louisiana law.[13]

On January 11, 2005, this Court granted defendants' request for a more definite statement and granted plaintiff's request to amend the complaint.  *See Dorsey v. Northern Life Ins. Co.*, 2005 WL 78937 (E.D. La. January 11, 2005).  On January 27, 2005, plaintiffs filed an amended complaint alleging the same causes of action and adding several allegations in support of such causes of

---

[11]Prior to September 2003, defendants offered two fixed annuities and one variable annuity in the section 403(b) market.  *See* Rec. Doc. No. 54, at 14, ¶ 10.

[12]*See* Comp., ¶¶ 18-23.

[13]In the complaint, plaintiffs did not specifically invoke Louisiana law with respect to their claims for detrimental reliance and breach of contract.

4

action.[14]  Specifically, plaintiffs allege that since the filing of this litigation, defendants have taken several retaliatory actions against plaintiffs which has caused damage to plaintiffs' business, including canceling plaintiffs' earned-reward trips and refusing to permit plaintiffs to attend out-of-town conventions.[15]  Plaintiffs also allege that defendants intentionally and/or negligently misrepresented to plaintiffs the purpose for which their confidential customer lists and information provided to defendants would be used and led plaintiffs' to believe that such customer lists would not be misused or usurped by defendants to obtain an unjust advantage over plaintiffs.[16]  Plaintiffs allege that had they known of defendants' intention at the inception of their relationship, plaintiffs would not have agreed to use their labor and skill to develop business for defendants.[17]  On April 11, 2005, defendants filed the instant motion for judgment on the pleadings.[18]

## LAW AND ANALYSIS

I.  *Standard Applicable to Motion for Judgement on the Pleadings*

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." When analyzing a Rule 12(c) motion, the pleadings should be construed liberally, and a judgment on the pleadings is appropriate only if there are no material facts in dispute and questions of law are all that remain.  *Brittan Comm. Int'l Corp. v. Southwestern Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002); *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.

---

[14]Rec. Doc. No. 49 ("Amd. Comp.").

[15]Amd. Comp., ¶ 23(a).

[16]*See id.* at ¶ 38(a).

[17]*Id.* at ¶ 38(b).

[18]Rec. Doc. No. 57.

1998); *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 5A

Wright & Miller, Federal Practice & Procedure § 1367 at 510).  A motion brought pursuant to Rule

12(c) is designed to dispose of cases when a judgment on the merits can be rendered by looking to

the substance of the pleadings and any judicially noticed facts.  *Great Plains Trust Co. v. Moran*

*Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2000) (citation omitted).  In determining

whether to grant a Rule 12(c) motion, a court ordinarily "must look only to the pleadings and accept

all allegations in them as true." *St. Paul Fire & Marine Ins. Co. v. Convalescent Serv., Inc.*, 193 F.3d

340, 342 (5th Cir.1999).  "[T]he central issue is whether, in the light most favorable to the plaintiff,

the complaint states a valid claim for relief." *Brittan*, 313 F.3d at 904 (internal quotations omitted).

When a party moves for judgment on the pleadings on the ground that the non-moving party

has failed to state a claim, the standard for analyzing the claims is substantially the same as that

which governs a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).  *See Jones v. M.L*

*Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Boswell v. Hon. Gov. of Texas*, 138 F. Supp. 2d 782,

784-85 (N.D. Tex. 2000); *see also Scott v. The Houma-Terrebonne Hous. Auth.*, 2002 WL

31007412, at *3 (E.D. La. Sept. 6, 2002)(citing *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide*

*Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).  Pursuant to that standard, the Court will not dismiss

a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102,

2 L. Ed. 2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

Accordingly, the court should not dismiss a claim "unless the plaintiff would not be entitled to relief

under any set of facts or any possible theory that he could prove consistent with the allegations in

the complaint." *Jones*, 188 F.3d at 324 (citing   *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th

6

Cir.1996)); *see also Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999)("A dismissal will not be affirmed if the allegations support relief on any possible theory."). However, " 'a plaintiff must plead specific facts, not mere conclusory allegations. . . .' " *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992)(quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)). Additionally, " 'legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " *Blackburn*, 42 F.3d at 931 (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Jones*, 188 F.3d at 324 (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)).

Ordinarily, the Court may look only to the contents of the pleadings and attachments thereto in deciding a motion to dismiss. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the Fifth Circuit has recognized one "limited exception" to that rule. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Documents attached to a motion to dismiss may be considered by a court if such documents are "referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Id.*; *Collins*, 224 F.3d at 499 (citation omitted). The Fifth Circuit has noted that a plaintiff's failure to object to consideration of such documents is "central to this Court's approval of that practice." *Scanlan*, 343 F. 3d at 536. By attaching documents central to the claims alleged, "the defendant merely assists the plaintiff in establishing the basis of the suit, and

the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

Defendant has attached plaintiffs' sales agreements to its motion for judgment on the pleadings. Plaintiffs refer to the sales agreements numerous times in both the original complaint and the amended complaint and the sales agreements are central to plaintiffs' claims in that all of plaintiffs' claims relate to the parties' contractual relationship. Furthermore, plaintiffs have not objected to this Court's consideration of the sales agreements. Therefore, in addition to the pleadings, this Court will consider the sales agreements in connection with deciding defendants' motion for judgment on the pleadings.

II.   *Choice of Law*

It is well-settled that "[a] federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Louisiana law "generally gives contracting parties the freedom to choose which state's law will govern disputes arising out of the contract." *Cherokee Pump & Equip., Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994)(citing La. Civ. Code art. 3540). Louisiana law provides that, with the exception of issues pertaining to the form of a contract or capacity to enter into a contract:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

La. Civ. Code art. 3540 & 1991 Revision cmts.[19]

The parties' sales agreements contain a provision entitled "Disputes" which sets forth a choice of law clause and a permissive forum selection clause:

> This Agreement is governed by the laws of the State of Washington. In any action or proceeding brought to enforce or otherwise arising out of or relating to this Agreement, you agree (1) to submit to the jurisdiction of any court sitting in King County, Washington, (2) to waive any objection you may have now or in the future to the laying of venue in any such action or proceeding in any such court, and (3) if you are not the prevailing party, to pay all of our expenses, including reasonable attorneys' fees, incurred by us to enforce our rights.[20]

Plaintiff concedes that, pursuant to the "Disputes" provision, issues pertaining to contract construction and enforcement are governed by Washington law. The dispute with respect to the choice of law provision is whether plaintiffs' tort and statutory claims fall within the scope of the provision. Citing La. Civ. Code art. 3540, defendants argue that all of plaintiffs' tort and statutory claims are subject to dismissal for failure to plead such claims pursuant to Washington law in accordance with the choice of law clause. Defendants contend that the "Disputes" provision, when read as a whole, provides that Washington law should apply to any dispute "arising out of or relating to" the sales agreements. Plaintiffs respond by arguing that the choice of law with respect to plaintiffs' tort claims is not governed by article 3540, which is applicable to conventional obligations, but by La. Civ. Code art. 3515, which is the Louisiana general choice of law provision.[21]

---

[19]Plaintiffs do not contend that the choice of law clause contravenes any public policy of any state.

[20]Rec. Doc. No. 57, Exs. 3, 7 at ¶ 20; *id.*, Exs. 4-6, 8 at ¶ 20.  This Court has previously held that the forum selection clause contained in the above-quoted provision is a permissive forum selection clause.  *See Dorsey v. Northern Life Ins. Co.*, 2004 WL 2496214, at *4 (E.D. La. November 5, 2004).

[21]La. Civ. Code art. 3515 provides:
   Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most

Additionally, plaintiffs argue that the language in the choice of law clause is not sufficiently broad to encompass their tort claims and that courts in this circuit have held that similarly worded provisions do not apply to tort claims.

Pretermitting the issue of whether plaintiffs' tort claims raise "issues of conventional obligations" within the meaning of article 3540, the Court is unpersuaded by defendants' argument that the language in the choice of law clause in the "Disputes" provision is broad enough to encompass plaintiffs' tort and statutory claims. As an initial matter, this Court notes that the choice of law clause and the permissive forum selection clause contained in the "Disputes" provision are distinct. The first sentence of the "Disputes" provision addresses choice of law and it states that "[t]his Agreement is governed by the laws of the State of Washington." The second sentence in the "Disputes" provision is addressed to the parties' agreement with respect to a permissive choice of forum and plaintiffs' potential liability for defendants' attorney's fees and costs. Interpreting the second sentence of the provision, upon which defendants rely, this Court has already stated that it "requires only that plaintiffs . . . submit to the jurisdiction of the [Washington] court and waive any objections to venue should a lawsuit be filed in that venue." *Dorsey*, 2004 WL 2496214, at *4. The permissive choice of forum provision applies, by its own terms, to "any action or proceeding brought to enforce or otherwise arising out of or relating to this Agreement."

_____

seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Plaintiffs contend, and defendants do not dispute, that Louisiana law would apply to plaintiffs' tort claims absent the choice of law provision in the contract. Defendants argument for dismissal rests entirely on the argument that the choice of law provision is broad enough to encompass all of plaintiffs' claims.

Plaintiffs do not contend that their claims are not claims "otherwise arising out of or relating to this Agreement."  Instead, the parties' arguments pertaining to the "Disputes" provision revolves around one central issue: whether the language used in the second sentence, *i.e.*, the choice of forum sentence, may be read to modify or expand the language used in the first sentence of the provision, *i.e.*, the choice of law provision.  Neither party has directed the Court to any Louisiana or U.S. Fifth Circuit decision explicitly addressing this issue.  However, two New York courts have addressed the issue of "whether the court should 'consider language in a forum selection clause to add to, and/or modify, the terms of the choice-of-law clause' " and have answered that question in the negative.  *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2001 WL 967606, at *3 (W.D.N.Y. August 23, 2001)(quoting *In re Lois/USA Inc.*, 264 B.R. 69, 101 (Bankr. S.D.N.Y. 2001)).  As explained by those courts:

> The choice-of-law clause does not address the court or courts in which the law is to be applied, and the forum selection clause does not address the law the chosen forum is to apply when the chosen forum . . . hears the case. Among many other things, the former goes much more to the parties' substantive rights, and the latter goes much more to the parties' litigation needs, and in particular, the place where, and procedures under which, their substantive rights are determined. A choice-of-law clause and a forum selection clause are not the same, and address different needs and concerns.

*Robbins & Myers*,  2001 WL 967606, at *3 (internal quotations and citation omitted); *In re Lois*, 264 B.R. at 101.  Based upon that rationale, both courts ultimately concluded that the scope of a choice of law provision was controlled by its own language and that broader language in a forum selection provision did not govern the scope of a choice of law provision.  *See Robbins & Myers*, 2001 WL

11

967606, at *3; *In re Lois*, 264 B.R. at 103.[22]   The holdings in *Robbins & Myers* and *In re Lois* are consistent with the Fifth Circuit's recognition of the general principle that it is not illogical that a choice of law clause would select one forum's substantive law to resolve a dispute when a forum selection clause in the same agreement specifies a different forum as the place for the resolution of such a dispute if such an interpretation is supported by the language in the provision.   *See Mitsui & Co. v. MIRA M/V*, 111 F.3d 33, 37 (5th Cir. 1997)(rejecting the argument that the application of American law pursuant to a choice of law provision was inconsistent with a forum selection clause in the same contract selecting English courts for the resolution of disputes).

Based upon the foregoing authorities, the Court rejects defendants' argument that the "Disputes" provision expressly provides for the application of Washington substantive law to all disputes "arising out of or relating to" the sales agreements.   The broad language upon which defendants rely is contained in the sentence addressed to the parties' waiver of any objection to the jurisdiction of the Washington courts.   The first sentence of the "Disputes" provision, the choice of law sentence, contains narrower language and it addresses a different aspect of the parties' agreement with respect to the resolution of disputes. The choice of law sentence states only that "*[t]his Agreement* is governed by the laws of the State of Washington."[23]   Courts in this circuit have

---

[22]The Court notes that in both *Robbins & Myers* and *In re Lois*, the courts noted that the choice of law provisions were in separate sections of the agreements at issue.  However, the reasoning in those cases does not rest on that fact.  The *In re Lois* court specifically declined to apply a Second Circuit decision, *Turtur v. Rithschild Registry Intern., Inc.*, 26 F.3d 304, 310 (2d Cir. 1994), that "used language in the second sentence of that paragraph – the forum selection clause – to broaden the scope of the first sentence, the choice of law" because there was no suggestion that the parties in *Turtur* briefed or argued whether language in a forum selection clause properly should be deemed to modify the choice-of-law clause and, consequently, there was no indication that the *Turtur* court specifically ruled on that issue or focused on it.  264 B.R. at 101.  In this case, plaintiff has specifically raised the argument that the forum selection clause should not be interpreted to broaden the language of the choice of law clause.  Because the issue is squarely presented in this case, the Court finds the reasoning of the *In re Lois* and *Robbins & Myers* decisions persuasive notwithstanding that the choice of law clause and the permissive forum selection clause at issue in this case, as in *Turtur*, appear in the same provision of the plaintiffs' sales agreements.

[23](emphasis supplied).

repeatedly construed similarly worded choice of law clauses to apply only to contract claims and not to tort claims arising out of the contractual relationship. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726-27 (5th Cir. 2003)(applying Texas choice of law principles and holding that a choice of law clause stating that the "Agreement shall be governed by, and construed in accordance with, the internal laws of the State of New York" applied only to construction and interpretation of the contract and did not encompass plaintiff's claims of fraud and negligent misrepresentation); *Thompson & Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 433 (5th Cir. 1996)(holding that a choice of law clause that applied to the "agreement and its enforcement" did not encompass tort claims because such claims were separate from the agreement and its enforcement); *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990)(holding that a choice of law clause that stated that "[t]his Agreement shall be construed under the laws of the State of California" did not encompass tort claims because "the choice of law clause does not address the general rights and liabilities of the parties"); *Thomas v. Fidelity Brokerage Servs., Inc.*, 977 F. Supp. 791, 795-96 (W.D.La. 1997)(holding that a choice of law provision stating that "this Agreement and its enforcement shall be governed by the laws of the Commonwealth of Massachusetts" unambiguously stated the parties' intent to apply Massachusetts law to issues of contract construction and enforcement only).  Because the choice of law provision applies only to "[t]his Agreement," the clause does not encompass plaintiffs' tort and statutory claims and such claims are not subject to dismissal for failure to plead them pursuant to Washington law.  Accordingly, this Court analyzes plaintiffs' tort claims and statutory claims as plead pursuant to Louisiana law.

III.    *Breach of Contract/Breach of the Duty of Good Faith and Fair Dealing*

        Plaintiffs allege that defendants breached the written sales agreements and certain

unspecified oral agreements by (1) creating an AFT-endorsed § 457/403(b) plan; (2) advising plaintiffs that they could not sell ING or Reliastar § 403(b) plans if plaintiffs relied on an AFT endorsement to do so; (3) utilizing in-house agents to sell the newly created AFT-endorsed annuity plans to AFT teachers; and (4) using plaintiffs' "individual proprietary information"[24] in order to sell the AFT-endorsed annuity product.  Plaintiffs allege that defendants violated the implied covenant of good faith and fair dealing, and that they breached the entire contract by "effectively wiping out any and all commissions, premiums and sales to which plaintiffs were entitled."[25]

Although not alleged in any complaint, plaintiffs argue in their  brief that defendants excluded them from selling annuity products to AFT teachers because plaintiffs intended to advise those teachers that the new AFT-endorsed annuity was less suitable for their retirement needs than the existing annuity products offered by defendants.[26]  Plaintiffs also allege that defendants have retaliated against plaintiffs by canceling earned-reward trips and by denying plaintiffs participation in out-of-town agent conventions in contravention of "oral, written or customary agreements."[27]

Defendants argue that plaintiffs' contract claim cannot be sustained because (1) plaintiffs have not and cannot identify any term of the written sales agreements that was breached; (2) the contract expressly permits the conduct alleged; and (3) the integration provisions of the sales

---

[24]*See* Comp., ¶ 36.

[25]Amd. Comp., ¶ 36(c).

[26]Defendants have argued that this Court cannot consider any such allegation because it is not alleged in any complaint.  However, this Court may not dismiss plaintiffs claim "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."  *Jones*, 188 F.3d at 324 (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir.1996)).  Because plaintiffs' allegation as to defendants' motive for allegedly precluding plaintiffs from selling § 457/403(b) annuities to AFT teachers is consistent with and merely amplifies the factual allegations in the complaint, plaintiffs argument with respect to defendants' alleged motive may be considered when deciding if plaintiffs can state a claim under any set of facts consistent with those facts alleged in the complaint.

[27]Amd. Comp., ¶ 23(a).

agreements bar enforcement of any alleged oral contracts.  Plaintiff responds by arguing that (1) plaintiffs should be afforded discovery to establish their breach of contract claim; (2) the sales agreements do not permit the defendants' conduct; and (3) the sales agreements' various terms do not preclude enforcement of any oral agreements.

Pursuant to Washington law, the essential elements of a breach of contract claim are: "(1) the existence of a contract, (2) a material breach of that contract, and (3) resulting damage." *St. John Med. Ctr. v. State ex. rel. Dept. of Soc. and Health Servs.*, 38 P.3d 383, 390 (Wash. Ct. App. 2002). "A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Northwest Indep. Forest Mfrs. v. Dep't of Labor & Indus.* 899 P.2d 6, 9 (Wash. Ct. App. 1995). "The touchstone of contract interpretation is the parties' intent." *Tanner v. Puget Sound Power & Light Co.*, 911 P.2d 1301, 1310 (Wash. 1996)(citation omitted).   As noted by the Washington Supreme Court:

> In Washington, the intent of the parties to a particular agreement may be discovered not only from the actual language of the agreement but also from viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

*Id.*  Interpretation of a contract's provisions is a question of law "only when (1) the interpretation does not depend on the use of extrinsic evidence, or (2) only one reasonable inference can be drawn from the extrinsic evidence." *Id.*

A.   *Written Sales Agreements*

With respect to the written sales agreements, the Court agrees with defendants that plaintiffs have failed to state a breach of contract claim.  In the complaint, the amended complaint and

multiple filings directed to this Court, plaintiffs have been unable to identify any term of the written sales agreements they claim was breached. Instead, plaintiffs simply assert the need to conduct discovery on the issue. The sales agreements expressly provide that defendants "reserve the right to appoint other sales representatives in the same states."[28]  Additionally, each written agreement provides that "any . . . documents . . . and other books or papers" connected with plaintiffs' appointment as independent sales agents "are our property, whether or not we paid for them."[29] Finally, the written agreements provide that defendants may unilaterally change the terms of the sales agreements with respect to commissions and service fees on business written after such a change.[30]

The language of the sales agreements is clear, unambiguous, and does not depend on extrinsic evidence for its interpretation. The contract provisions plainly and expressly contemplate that other sales agents would be appointed to sell defendants' annuity products in plaintiffs' sales area and expressly declares that "any . . .documents" connected with plaintiffs' appointment are defendants' property. The language of the sales agreements is broad and encompasses the possibility that other sales agents could be appointed and that lists of plaintiffs' customers given to defendants could be used by defendants in conjunction with selling other annuity products. Moreover, to the extent that plaintiffs allege that defendants' creation of an AFT-endorsed annuity and their use of in-house agents to sell such a product has impacted plaintiffs' entitlement to certain commissions and fees, the contract reserves to defendants the right to set commissions and fees on such a product.

---

[28]Rec. Doc. No. 57, Exs. 3-8, ¶ 1.

[29]*Id.*, Exs. 3-8, ¶ 11.

[30]*Id.*, Exs. 3, 4, 6 & 8 at ¶ 6; Exs. 5 & 7 at ¶ 7.

Notably, plaintiffs do not allege that they were precluded from participating in the sale of the AFT-endorsed annuity product.  Rather, plaintiffs argue that they thought such product was unsuitable for their AFT-teacher clients.  Given the plain terms of the sales agreements coupled with plaintiffs' inability to identify any term of the sales agreement that was allegedly breached by defendants' conduct, defendants are entitled to dismissal of plaintiffs' breach of contract claim insofar as it is based on a breach of the written sales agreements.

For the same reasons, plaintiffs cannot maintain a claim for the breach of the duty of good faith as it pertains to the written sales agreements.  The applicable principles of law were set forth by the Washington Supreme Court in *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991):

> There is in every contract an implied duty of good faith and fair dealing. This duty obligates the parties to cooperate with each other so that each may obtain the full benefit of performance. *Metropolitan Park Dist. of Tacoma v. Griffith,* 106 Wash.2d 425, 437, 723 P.2d 1093 (1986); *Lonsdale v. Chesterfield,* 99 Wash.2d 353, 357, 662 P.2d 385 (1983); *Miller v. Othello Packers, Inc.,* 67 Wash.2d 842, 844, 410 P.2d 33 (1966). However, the duty of good faith does not extend to obligate a party to accept a material change in the terms of its contract. *Betchard-Clayton, Inc. v. King,* 41 Wash. App. 887, 890, 707 P.2d 1361, *review denied,* 104 Wash.2d 1027 (1985). Nor does it "inject substantive terms into the parties' contract". Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement. *Barrett v. Weyerhaeuser Co. Severance Pay Plan,* 40 Wash. App. 630, 635 n. 6, 700 P.2d 338 (1985). Thus, the duty arises only in connection with terms agreed to by the parties. *See Matson v. Emory,* 36 Wash. App. 681, 676 P.2d 1029 (1984); *Lonsdale v. Chesterfield,* 99 Wash.2d 353, 662 P.2d 385 (1983); *CHG Int'l, Inc. v. Robin Lee Inc.,* 35 Wash. App. 512, 667 P.2d 1127, *review denied,* 100 Wash.2d 1029 (1983); *Miller v. Othello Packers, Inc.,* 67 Wash.2d 842, 843-44, 410 P.2d 33 (1966).

The *Badgett* court specifically rejected the principle that the scope of the good faith obligation can be expanded by the conduct of a contracting party which gives rise to reasonable expectations on the part of the other party.  *Id.* at 360 n.2.  Instead, the court emphasized that the

duty of good faith is not a "free-floating duty of good faith unattached to the underlying legal document" and that "the duty to cooperate exists only in relation to performance of a specific contract term." *Id.* (citation omitted). The court concluded that "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Id.*

Because the plaintiffs have failed to identify any term of the sales agreements which imposed a duty that was breached, and because the plain terms of the contract expressly contemplate the conduct of which plaintiffs complain, plaintiffs cannot sustain a breach of the duty of good faith based upon defendants' performance of any term of the sales agreements.

B.    *Alleged Oral Agreements*

With respect to the alleged oral agreements, however, the Court comes to a different conclusion. Defendants' argue that two clauses of the sales agreements preclude enforcement of any alleged oral agreements. The sales agreements provide:

> This Agreement replaces and terminates any prior Agreement between us regarding the products shown in your Compensation Schedule . . . .[31]

The sales agreements further provide:

> We have the right to change the terms of this Agreement as they relate to commissions and service fees on business written after such change. *No other change can be made unless in writing and signed by you and our Assistant Secretary or Vice President.*[32]

Based upon these two provisions, defendants argue that the sales agreements are fully integrated expressions of the relationship between the parties and, therefore, any oral alterations to the sales

_____

[31] *E.g.*, Rec. Doc. No. 57, Ex. 3, ¶ 16.

[32] *E.g.*, *id.*, ¶ 7 (emphasis supplied).

agreements are unenforceable.

An integrated writing is "a writing intended as a final expression of the terms of the agreement." *Emrich v. Connell*, 716 P.2d 863, 866 (Wash. 1986).  Whether the parties intend a written document to be a final expression of the terms of the agreement is a question of fact. *M.A. Mortenson Co., Inc. v. Timberline Software Corp.*, 998 P.2d 305, 311 (Wash. 2000).

> In making this preliminary determination of whether the parties intended the written document to be an integration of their agreement, which is a question of fact, the trial court must hear all relevant, extrinsic evidence, oral or written.  If, after hearing all the evidence, the court determines that the writing is the final and complete expression of the parties' agreement--*i.e., completely integrated*--then the extrinsic evidence is disregarded.  If, however, the court finds that the parties intended the writing to be a final expression of the terms it contains but not a complete expression of all terms agreed upon--*i.e., partially integrated*--then the terms not included in the writing may be proved by extrinsic evidence *only insofar as they are not inconsistent with the written terms.*

*Emrich*,  716 P.2d at 866-67 (internal citations omitted) (emphasis in original).  "The presence of an integration clause 'strongly supports a conclusion that the parties' agreement was fully integrated . . . .' " *M.A. Mortenson Co.*, 998 P.2d at 311 (quoting *Olsen Media v. Energy Sciences, Inc.*, 648 P.2d 493, 497 (Wash. Ct. App. 1982)).  However, the presence of an integration clause is not conclusive.  *See Olsen*, 648 P.2d at 497; *see also AEA Int'l USA, Inc. v. Boudreaux*, 108 Wash. App. 1054, 2001 WL 1338452, at *3 (Wash. Ct. App. Oct. 29, 2001).

The presence of the two clauses addressing both prior agreements and subsequent amendments to the sales agreements are strong evidence that the parties intended that the sales agreements be the final expression of the terms of those agreements.  However, Washington law clearly disfavors making a determination with respect to the parties' intent regarding integration of a contract absent evidentiary development of a case.  Although the Court agrees that, in large part,

19

plaintiffs allegations regarding alleged oral contracts are vague, plaintiffs have, for example, specifically alleged in the amended complaint that defendants violated oral and/or customary agreements pertaining to plaintiffs' participation in earned reward trips and out-of-town conventions. Plaintiffs have alleged that they were damaged by defendants' conduct in this regard by suffering loss of business contacts, lost business opportunities, and lost networking opportunities.[33]   The sales agreements contain no provision that addresses plaintiffs' entitlement to bonus or incentive programs such as earned-reward trips and attendance at out-of-town conventions.  Therefore, the sales agreements may be found to be incomplete and, hence, only partially integrated.  If plaintiffs prove the existence of oral agreements that touch subject matter not addressed in the sales agreements, the clauses cited by defendants would not preclude enforcement of an alleged oral agreement with respect to such subject matter.  *See Clark v. Clark*, 94 Wash. App. 1022, 1999 WL 106898, at *5 (Wash. Ct. App. March 1, 1999) (reasoning that an integration clause in a property agreement which did not delineate the parties' obligations with respect to support for a child did not bar enforcement of a separate agreement addressing the support issue).   Because any finding of integration pursuant to Washington law is a question of fact, defendants are not, based upon the integration clauses alone, entitled to a judgment on the pleadings with respect to the alleged oral agreements.[34]

IV.   *LUTPA*

The Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), La. Rev. Stat. §§ 51:1401-30,  provides that "[u]nfair methods of competition and unfair or deceptive acts or

---

[33]Amd. Comp., ¶ 23(a).

[34]Such an issue is more appropriately addressed on a motion for summary judgment.

practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A). "A trade practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Marshall v. Citicorp,* 601 So. 2d 669, 670 (La. App. 5th Cir.1992); *see also Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Camp, Dresser & McKee, Inc. v. Steimle and Associates, Inc.*, 652 So. 2d 44, 48 (La. App. 5th Cir.1995).

Defendants argue that plaintiffs cannot maintain an action pursuant to LUTPA because plaintiffs are neither business competitors nor consumers. LUTPA grants a personal right of action to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405 . . . ." La. Rev. Stat. § 51:1409. Some Louisiana Courts of Appeal have interpreted the statute narrowly and held that standing to assert a LUTPA claim is restricted to business competitors and direct consumers; other Louisiana Courts of Appeal have read the statue broadly stating that business competitors and consumers are not the exclusive classes of persons who may bring a LUTPA claim. *Compare, e.g.*, *Sportsman Cove, Inc. v. Brunswick Corp.*, 845 So. 2d 1231, 1232 (La. App. 5th Cir. 2003) (holding that the personal right of action granted by LUTPA is restricted to direct consumers or business competitors); *Nat'l Gypsum Co. v. Ace Wholesale*, 738 So. 2d 128, 130 (La. App. 5th Cir. 1999) (acknowledging that some courts have given the statute a broad reading, but restricting a LUTPA claim to direct consumers and business competitors because LUTPA was not intended to confer such a broad scope of action); *Morris v. Rental Tools, Inc.*, 435 So. 2d 528, 533 (La. App. 5th Cir. 1983) (adopting the narrow interpretation of the scope of LUTPA, but extending a right of action to "potential as well

21

as actual competitors") *with Capitol House Pres. Co., L.L.C. v. Perryman Consultants, Inc.*, 725 So. 2d 523, 530 (La. App. 1st Cir. 1999) ("Although business consumers and competitors are included in the group afforded this private right of action, Louisiana courts have repeatedly held they are not its exclusive members") (citations omitted); *Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.*, 622 So. 2d 760, 763 (La. App. 2d Cir. 1993) (same); *Jarrell v. Carter*, 577 So. 2d 120, 123 (La. App. 1st Cir. 1991) (same).  Noting the split in the state courts, the U.S. Fifth Circuit Court of Appeals has followed the narrow interpretation and held that the scope of the private right of action afforded by LUTPA is "limited to consumers and business competitors."  *Gardes Directional Drilling v. U.S. Turnkey Exploration Co.*, 98 F.3d 860, 868 (5th Cir. 1996); *see also Tubos De Acero De Mexico, S.A. v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 480 (5th Cir. 2002) ("LUTPA's private right of action is limited to direct consumers or to business competitors.") (citation omitted); *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 405 (5th Cir. 2000); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 975 F.2d 1192, 1205 (5th Cir. 1992).  Similarly, federal district courts have followed the narrow interpretation of LUTPA.  *See e.g.*, *Intra-Operative Monitoring Servs., Inc. v. Blue Cross/Blue Shield of Ala.*, No. Civ. A. 03-2829, 2004 WL 42635, at *2 (E.D. La. Jan. 5, 2004) (dismissing a LUTPA claim because "[c]onstruing the allegations of the Petition in plaintiff's favor, plaintiff does not qualify as either a consumer or competitor"); *Bollinger v. Tanner Cos., LP*, No. Civ. A. 02-3248, 2003 WL 1824836, at *3 (E.D. La. Apr. 7, 2003) ("The Act provides a cause of action only for direct consumers and business competitors.") (citations omitted); *see also Plaquemine Marine, Inc. v. Mercury Marine*, 859 So. 2d 110, 117 (La. App. 1st Cir. 2003) (noting that the federal courts have followed the Louisiana Fifth Circuit in limiting standing to assert a LUTPA claim to consumers and business competitors).

Plaintiffs argue that they are competitors with defendants because they are not contractually barred from acting as independent agents for other insurance companies and because they are actually competing with defendants by selling defendants' competitors insurance and annuity products. In a factually analogous context, the Louisiana Fifth Circuit Court of Appeal has held that a LUTPA claim cannot be asserted in the context of a distributor/manufacturer business relationship. *See Sportsman Cove, Inc.*, 845 So. 2d at 1232 (holding that a marine retail dealer did not have standing to assert a LUTPA claim against a defendant with whom it had contracted to market marine outboard motor); *Nat'l Gypsum Co.*, 738 So. 2d at 130 (holding that a business did not have standing to bring a LUTPA claim against its distributor because a distributor is not a competitor). The *National Gypsum Co.* court explicitly rejected the argument that a distributor becomes a competitor by virtue of its potential to compete with a supplier by obtaining a different supplier of the same or similar products. *Id.*; *see also Bollinger*, 2003 WL 1824836, at *3 (finding that a plaintiff who had contracted with the defendant to serve as a sales representative and who was not contractually barred from competing with defendant did not have standing to assert a LUTPA claim).

All of plaintiffs' claims arise out their status as distributors of defendants' annuity products and defendants' alleged conduct within the context of that relationship. None of the plaintiffs' causes of action center on plaintiffs' ability to sell competing insurance or annuity products, there are no allegations that defendants interfered with plaintiffs' contractual rights to sell such competing products, and there is no allegation that defendants' direct competitors, *i.e.*, other insurance companies, were harmed. *See Nursing Enters., Inc.*, 719 So. 2d 524, 528 (La. App. 2d Cir. 1998) (noting that pursuant to LUTPA, a defendant's motivation "must have been taken with the specific purpose of harming the competition"). Accordingly, the allegations in plaintiffs' complaints, viewed

23

in the light most favorable to plaintiff, do not support an inference that plaintiffs are defendants' business competitors.  Therefore, plaintiffs do not have standing to pursue a LUTPA claim.[35]

V.      *LUTSA*

Plaintiffs allege that defendants' conduct violated the Louisiana Uniform Trade Secrets Act ("LUTSA"), La. Rev. Stat. §§ 51:1431-39.  The essential elements of a claim pursuant to LUTSA are: (a) the existence of a trade secret; (b) a misappropriation of the trade secret by another; and (c) the actual loss caused by the misappropriation.  *Computer Mgmt. Assistance Co.*, 220 F.3d at 403 (citing *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)(citations omitted)).[36] In order to maintain a cause of action pursuant to LUTSA, "[t]he plaintiff has the burden of establishing both the existence of a legally protectable secret and a legal basis upon which to predicate relief." *Pontchartrain Med. Labs, Inc. v. Roche Biomedical Labs., Inc.*, 677 So. 2d 1086, 1090 (La. App. 1st Cir. 1996).  The analytical framework applicable to a LUTSA claim is as follows:

> The threshold inquiry in every trade secrets case is whether a legally protectable trade secret actually existed. The second element is whether an express or implied contractual or confidential relationship existed between the parties which obligated the party receiving the secret information not to use or disclose it. Finally, the plaintiff must

---

[35]Because the Court finds that plaintiffs lack standing to assert a LUTPA claim, the Court does not address defendants' alternative argument that plaintiffs' LUTPA claims are barred because such claims concern actions subject to the jurisdiction of the insurance commissioner.  *See* La. Rev. Stat. § 51:1406(1).

[36]Pursuant to LUTSA:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

La.Rev.Stat. Ann. § 51:1431(4).  " 'Misappropriation' means . . . disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was  . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ."  La. Rev. Stat. § 51:1431(2)(b)(ii)(bb).

> prove the party receiving the secret information wrongfully breached
> its duty of trust or confidence by disclosing or using the information
> to the injury of plaintiff.

*Pontchartrain Med. Labs*, 677 So. 2d at 1090 (internal citations omitted); *see Engineered Mech. Servs., Inc. v. Applied Mech. Tech., Inc.*, 464 So. 2d 329, 333-34 (La. App. 1st Cir. 1985).

A customer list may constitute a trade secret "if efforts are made to maintain its secrecy." *Id.* (citing *Wyatt v. PO2, Inc.*, 651 So. 2d 359 (La. App. 2d Cir. 1995)).  Although the Louisiana courts have stated that whether something constitutes a trade secret is a question of fact, *Wyatt*, 651 So. 2d at 363, a judgment on the pleadings is nevertheless appropriate if a plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the allegations in the complaint.  *Great Plains Trust Co.*, 313 F.3d at 312; *Jones*, 188 F.3d at 324.  Plaintiffs repeatedly plead that plaintiffs' client lists are "confidential" and constitute "proprietary information."[37]  However, in order to survive defendants' motion,  plaintiffs must plead specific facts, not mere conclusory allegations.  *Guidry*, 954 F.2d at 281.  This Court will not accept as true conclusory allegations or unwarranted deductions of fact.  *Great Plains Trust Co.*, 313 F.3d at 312.

There are no allegations in the complaint from which it can be inferred that plaintiffs made any efforts to maintain secrecy with respect to plaintiffs' customer lists vis-à-vis defendants.  The allegations in the complaint and the terms of the sales agreements lead inexorably to an opposite inference.  Plaintiffs allege that in connection with their appointment as independent insurance agents, each plaintiff shared his or her client list with the defendants.[38]  The sales agreements specifically provide that  "any . . . documents . . . and other books or papers" connected with

---

[37]*E.g.*, Comp., ¶¶ 15, 22, 23.

[38]*See* Comp., ¶ 15.

plaintiffs' appointment as independent sales agents "are our property, whether or not we paid for them."[39]  These circumstances preclude any inference that plaintiffs' client lists were confidential. *See Millet v. Crump*, 687 So. 2d 132, 136 (La. App. 5th Cir. 1997) ("[I]nformation regarding policyholders is generally not confidential since that information is readily obtainable from the policyholders, the policies, and from the insurance company.").  Taking the allegations of the complaint as true, plaintiffs turned over their client lists in the face of a contractual agreement which provided that all such documents are defendants' property.  Additionally, the sales agreements contain no confidentiality clause or any other clause restricting defendants' use of information provided to them by plaintiffs.  *See Wyatt*, 651 So. 2d at 363 (finding that a customer list is not a trade secret where there was no contractual agreement addressing the confidentiality of such information and no restrictions on the use of such information).  Given these circumstances, it appears beyond doubt that plaintiff can prove no set of facts consistent with the allegations in the complaint and consistent with the terms of the sales agreements which would entitle them to relief pursuant to LUTSA.

VI.     *Violations of Louisiana Civil Code Article 2315*

        Article 2315 of the Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  It has long been established that "[t]his single article forms the basis of all tort liability in Louisiana."  *Devore v. Hobart Mfg. Co.*, 367 So. 2d 836, 840 (La. 1979).

        Citing *Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1158 (La. App. 4th Cir. 2001), defendants argue that because of the existence of the sales agreements, which defendants

---

[39]*Id.*, Exs. 3-8, ¶ 11.

contend govern the parties' entire relationship, plaintiffs cannot, as a matter of law, assert any tort claims and plaintiffs' only remedy is for breach of contract.

A close reading of *Sun Drilling* reveals, however, that defendants read that decision too broadly. The issue in *Sun Drilling* was whether the trial evidence supported the plaintiff's claim that officers of a corporation had tortiously interfered with a contract between the plaintiff and the corporation. *See id.* at 1154-59. In its discussion of Louisiana's narrow cause of action for tortious interference with contract, the court reiterated that the Louisiana courts have rejected formulating a "broad and undefined tort . . . in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be considered improper in some undefined way." *Id.* at 1158 (citation, internal quotation marks, and emphasis omitted). The court reasoned that although the Louisiana Supreme Court has recognized that article 2315 imposes a broad basis for delictual liability, a narrow cause of action for tortious interference with contract was justified by "the need to avoid blurring the distinction between tort and contract claims." *See id.* Having previously noted that a tortious interference with contract claim requires the plaintiff to show that a corporate officer caused his corporation-employer to breach a contract or make the performance of such a contract impossible or more burdensome, the court reasoned:

> The rules governing contract disputes and breaches are separate from those governing offenses and quasi offenses, and these separate legal domains should not overlap unless there is a duty on the part of the person or legal entity, separate and apart from the obligations created by the terms of a contract. *Spears v. American Legion Hospital,* 00-865 (La. App. 3 Cir. 1/31/01), 780 So. 2d 493, 497.

*Id.*

In the context of discussing the narrow delict of tortious interference with contract, neither the *Sun Drilling* court nor the court deciding *Spears*, the cased cited by the *Sun Drilling* court,

27

purported to lay down a broad principle of law that the existence of a contract between a plaintiff and defendant precludes a plaintiff from seeking recovery in tort or that the existence of contractual obligations negates the applicability of delictual duties.  The distinction between an action on a contract and a tort action is that " 'the former flows from the breach of a special obligation contractually assumed by the obligor, whereas the latter flows from the violation of a general duty owed to all persons.' "  *Certain Underwriters at Lloyd's, London v. Sea-Lar Mgmt.*, 787 So. 2d 1069, 1075 (La. App. 4th Cir. 2001) (quoting *Ride Oak Dev., Inc. v. Murphy*, 641 So. 2d 586, 591 (La. App. 4th Cir. 1994)).  However, it is well-settled in Louisiana that the same acts or omissions may constitute a breach of both general duties and contractual duties and may give rise to both actions in tort and actions in contract.  *See Corbello v. Iowa Prod.*, 850 So. 2d 686, 708 (La. 2003) ("We recognize the long-standing rule that 'when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions.' ") (quoting *Fed. Ins. Co. v. Ins. Co. of N. Am.* 263 So. 2d 871, 872 (1972)); *Cooper v. La. Dep't of Public Works*, 870 So. 2d 315, 331 (La. App. 3d Cir. 2004) ("[W]hen a party's damage arises from the breach of a contractual relationship, he or she may have a remedy both in contract and in tort.") (citation omitted); *Franklin v. Able Moving & Storage Co., Inc.*, 439 So. 2d 489, 491 (La. App. 1st Cir. 1983) ("The same acts or omissions may constitute breaches of both general duties and contractual duties giving rise to actions in both tort and contract.").

In addition to pleading a cause of action for tortious interference with contract, plaintiffs argue that they have plead facts and causes of action which implicate general duties as well as contractual duties and, therefore, their tort claims are not precluded by the existence of the sales

28

agreements.  Specifically, plaintiffs argue that (1) they have alleged a breach of the duty of good

faith and fair dealing; (2) they have alleged a claim of negligent misrepresentation; and (3) the facts

alleged in the complaint support recovery pursuant to article 2315 on the legal theory that defendants

tortiously interfered with plaintiffs' business relations with third parties.

With respect to a breach of the duty of good faith and fair dealing, defendants correctly note

that such a claim does not support a tort claim pursuant to article 2315.  Pursuant to both Louisiana

and Washington law, the duty of good faith and fair dealing does not exist absent a contract.

*Spillway Inv., L.L.C. v. Pilot Travel Centers L.L.C.*, No. Civ. A. 04-2451, 2005 WL 517498, at *7

(E.D. La. Feb. 22, 2005) ("Louisiana recognizes an implied covenant of good faith and fair dealing

in every contract. . . . Conversely, where no enforceable contract exists, no covenant of good faith

and fair dealing can be implied.") (internal citations omitted); *Badgett,* 807 P.2d at 360 ("[T]he duty

arises only in connection with terms agreed to by the parties.").  However, plaintiffs' claims of fraud,

negligent misrepresentation, as well as their argument that the facts alleged demonstrate that

defendants tortiously interfered with plaintiffs' business relations, implicate general tort duties which

do not arise as a result of the existence of the written sales agreements, but instead, from the broad

basis of tort liability established by article 2315.[40]   Because a given set of facts may provide the

_____

[40]Defendants correctly note that plaintiffs have not specifically plead a cause of action for tortious interference with business relations and they complain that plaintiffs should not be permitted to amend their complaint in their opposition to the motion for judgment on the pleadings.  Although plaintiffs have not specifically plead such a cause of action, plaintiffs have plead violations of article 2315.  Article 2315 provides the basis for a  torious interference with business theory of recovery as well as fraud and negligent misrepresentation theories.  *See  Griffin v. BSFI Western E & P, Inc.*, 812 So. 2d 726, 734 (La. App. 1st Cir. 2002)(noting that intentional or negligent misrepresentation may be characterized as a delict recognizable pursuant to La. Civ. Code 2315); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981) (noting that article 2315 is the basis for a claim of tortious interference with business relations).  The Court may not dismiss plaintiffs' claims pursuant to article 2315 unless it is clear that plaintiffs cannot recover under any theory cognizable under that article.  Moreover, in their reply, defendants have addressed that claim and argued that plaintiff has failed to state such a claim.  Under these circumstances, the Court will address the merits of plaintiffs' tortious interference with business claim.

basis for recovery in both contract and tort, the existence of the written sales agreements, alone, does not necessarily preclude plaintiffs from asserting tort claims.   Instead, the resolution of plaintiffs' tort claims depends upon whether the facts plead in plaintiffs' pleadings state a claim for relief under any tort theory raised.   Therefore, the Court will proceed to address the merits of plaintiffs' individual tort claims.

> A.   *Tortious Interference with Business Relations*

Louisiana courts have recognized a cause of action for tortious interference with business. *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992)(citations omitted); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981).   "In Louisiana, the delict is based on the principle that the right to influence others not to deal is not absolute." *Junior Money Bags*, 970 F.2d at 10 (citing *Ustica Enters., Inc. v. Costello*, 434 So. 2d 137, 140 (La. App. 5th Cir. 1983)).   The U.S. Fifth Circuit has summarized the governing rule stating that "Louisiana law protects the businessman from 'malicious and wanton interference', permitting only interferences designed to protect a legitimate interest of the actor." *Dussouy*, 660 F.2d at 601.   A plaintiff bringing a claim for tortious interference with business must ultimately show " 'by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.' " *Junior Money Bags*, 970 F.2d at 10 (quoting *McCoin v. McGehee*, 498 So. 2d 272, 274 (La. App. 1st Cir. 1986)(citation omitted)).   It is not sufficient for plaintiff to allege conduct which merely has an effect on its business relationships or economic opportunities absent allegations that a defendant maliciously attempted to prevent a third party from dealing with the plaintiff.  *See Nowling v. Aero Servs. Int'l, Inc.*, 752 F. Supp. 1304, 1312 n.7 (E.D. La. 1990); *Ustica*, 434 So. 2d at 140.

The Louisiana Fourth Circuit Court of Appeals has noted:

Although this cause of action has an ancient vintage, Louisiana jurisprudence has viewed it with disfavor. Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice. [*Dussouy,* 660 F.2d at 602]. "Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort." George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference,* 45 Loy. L.Rev. 395, 401 (1999). "Simply put, in most cases in which a corporation is acting to maximize profits-rather than to harm another business-it will be difficult for a plaintiff to produce evidence of bad faith or malicious intent." *Id.* at 404.

*JCD Marketing Co. v. Bass Hotels and Resorts, Inc.*, 812 So. 2d 834, 841 (La. App. 4th Cir. 2002); *see also Junior Money Bags*, 970 F.2d at 11 (noting that tortious interference with business is a "very limited form of recovery" in Louisiana). Malice is an essential element of a claim and actual malice must be plead in the complaint. *Dussouy,* 660 F.2d at 602.[41]

Plaintiffs have alleged that ING met with the AFT in an effort to offer an AFT-endorsed annuity plan.[42] Plaintiffs also allege that ING told plaintiffs that they would no longer be permitted to sell ING or Reliastar annuity products if plaintiffs relied on the AFT endorsement to do so.[43] Finally, plaintiffs have alleged that ING revealed the identity of plaintiffs' annuity customers to in-

---

[41]Ordinarily, the failure to plead malice does not warrant dismissal of a claim. *Dussouy,* 660 F.2d at 602. If the standards for reviewing requests to amend pursuant to Fed. R. Civ. P. 15(a) apply, "the appropriate course is to allow the plaintiff to amend his complaint to make the necessary allegations." *Id.* As explained further below, the deadline for amending pleadings has past and, therefore, Rule 15(a) does not apply and plaintiffs must show good cause to amend pursuant to Rule 16(b). *See Southwestern Bell Telephone Co. v. City of El Paso,* 346 F.3d 541, 546 (5th Cir.2003); *S & W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA,* 315 F.3d 533, 536 (5th Cir.2003).

[42]Comp., ¶ 18.

[43]*Id.*, ¶ 22.

house agents for the purpose of "misappropriating" plaintiffs' clients.[44]   These allegations are insufficient to support a claim for tortious interference with business relations.   There are no allegations that any in-house agent actually contacted any of plaintiffs' clients.   Moreover, even assuming that the in-house agents had done so, plaintiffs allegations show conduct which merely has an effect on plaintiffs' business relationships or economic opportunities with respect to selling a certain type of annuity product to AFT-member public school employees.   There are no allegations that any agent or any corporate defendant maliciously attempted to prevent any AFT-member public school employee who was one of the plaintiffs' clients from dealing with any such plaintiff. Accordingly, the facts alleged do not support a claim for tortious interference with business.

      B.   *Tortious Interference with Contract*

The Louisiana Supreme Court has recognized a cause of action for tortious interference with contract within the limited confines of a corporate officer's duty to refrain from intentional and unjustified interference with a contractual relationship between his employer and a third party.   *See Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1387-91 (5th Cir. 1991)(discussing *9 to 5 Fashions v. Spruney*, 538 So. 2d 228 (La. 1989)).   Additionally, the Fifth Circuit has recognized that the Louisiana Supreme Court has established that under some circumstances, a tort action may lie for interference with an attorney-client contract.   *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 44 (5th Cir. 1992)(citing *Chaffin v. Chambers*, 584 So. 2d 665 (La. 1991); *Penalber v. Blount*, 550 So. 2d 577 (La. 1989)).

The elements of a tortious interference with contract claim are the following:

      (1) the existence of a contract or a legally protected interest between

---

[44]*Id.*, ¶ 23.

> the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*9 to 5 Fashions*, 538 So. 2d at 234; *see also Sun Drilling*, 798 So. 2d at 1155.  "To state a cause of action for intentional interference with a contract, the plaintiff must allege and prove a breach of contract."  *Sun Drilling*, 798 So. 2d at 1155.  "Moreover, a plaintiff must prove that the corporate officers acted outside of their corporate authority or in a manner they knew to be detrimental to the corporate interest."  *Id.* (citation omitted).

The U.S. Fifth Circuit Court of Appeals, federal district courts in Louisiana, and various Louisiana Courts of Appeal since *9 to 5 Fashions* have "uniformly recognized the narrowness of Louisiana's tortious interference action."  *Egrov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 457 (5th Cir. 1999); *see also America's Favorite Chicken Co. v. Cajun Enters.*, 130 F.3d 180, 184 (5th Cir. 1997); *Am. Waste & Pollution Control*, 949 F.2d at 1386-87; *Oreck Holdings, L.L.C. v. Euro-Pro Corp.*, 2002 WL 59405, at *2 (E.D. La. Jan. 15, 2002); *White v. White*, 641 So. 2d 538, 541 (La. App. 3d Cir. 1994).  The Fifth Circuit has noted that even the Louisiana appellate courts which have purported to expand the cause of action have done so only within the limited confines of *9 to 5 Fashions*.  *Egrov*, 183 F.3d at 457 (citiations omitted).

There are no allegations in plaintiffs' complaint or amended complaint of a corporate officer intentionally and unjustifiably interfering with a contract between his corporate employer and a third party.  Nor are there any allegations that implicate the narrow expansion of the tort to an attorney-client contract.  Plaintiffs have not alleged any facts which support an inference that any corporate

officer acted outside his or her authority or that any conduct by any official was detrimental to the corporation.  To the contrary, plaintiffs allegations support only the inference that any conduct by any of the defendants' officers was taken on behalf of the various corporate defendants. Accordingly, the allegations in the complaint do not state a claim for intentional interference with contract.

      C.    *Intentional/Negligent Misrepresentation*

      Defendants have moved to dismiss plaintiffs' intentional and negligent misrepresentation claims for failure to plead such claims with particularity in accordance with Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  " 'What constitutes "particularity" will necessarily differ with the facts of each case . . . .' " *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).  "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Tel-Phonic Servs.*, 975 F.2d at 1138 (quoting 5C Wright &  A. Miller, *Federal Practice and Procedure* § 1297, at 590 (1990)); *see also Benchmark Elecs.*, 343 F.3d at 724; *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).  Agreeing with the Second Circuit's approach, the Fifth Circuit has stated:

> [A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.

*WMX Techs.*, 112 F.3d at 177 (citation omitted).  "Directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted." *Id.* at 178.  Courts in the Fifth

Circuit "apply the rule with force, without apology." *See id.* "A dismissal for failure to plead fraud with particularity as required by rule 9(b) is a dismissal on the pleadings for failure to state a claim." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citing *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 (5th Cir.1993)).

Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, the Fifth Circuit has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims. *Benchmark Elecs.*, 343 F.3d at 723.  In plaintiffs' complaint and amended complaint, plaintiffs have alleged that, based upon all of the factual allegations contained in the pleadings, defendants' conduct "constitutes fraud and/or negligent misrepresentation."[45]  When, as here, a plaintiff's fraud and negligent misrepresentation claims are based upon the same set of facts, the heightened pleading requirements of Rule 9(b) apply.  *Benchmark Elecs.*, 343 F.3d at 723.

Pursuant to Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *Ballard's Inc. v. N. Am. Land Development Corp.*, 677 So. 2d 648, 650 (La. App. 2d Cir. 1996); *see also* La. Civ. Code art. 1953.  The elements of a Louisiana delictual fraud or intentional misrepresentation claim are (1) a misrepresentation of a material fact; (2) made with the intent to deceive; and (3) justifiable reliance thereon with resultant injury.  *Guidry v. United States Tobacco*, 188 F.3d 619, 627 (5th Cir. 1999)(citations omitted).   Fraud may also result from silence or inaction.  La. Civ. Code art. 1953; *Ballard's*, 677 So. 2d at 650.  To sustain a claim for intentional misrepresentation by silence or inaction, a plaintiff must demonstrate that there is a duty

_____

[45]Comp., ¶ 38; Amd. Comp., ¶ 38(e).

to disclose information.  *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992); *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1383 (La.1990); *Ballard's*, 677 So. 2d at 651; *Guidry v. Bank of LaPlace*, 661 So. 2d 1052, 1059 (La. App. 4th Cir. 1995); *First Downtown Development v. Cimochowski*, 613 So. 2d 671, 677 (La. App. 2d Cir. 1993).  If a misrepresentation claim is based on a failure to disclose, "even fraudulent intent is insufficient to confer liability . . . in the absence of a duty to disclose."  *First Downtown*, 613 So. 2d at 677.

With respect to a claim for negligent misrepresentation, the Louisiana Supreme Court has held that a duty-risk negligence framework governs the analysis of the claim.  *Daye v. Gen. Motors Corp.*, 720 So. 2d 654, 659 (La. 1998).  In order to sustain a claim for negligent misrepresentation, whether the plaintiff is a third-party or a party to the alleged negligent misrepresentation, there must be a legal duty on the part of the defendant to supply correct information to the plaintiff, there must be a breach of that duty, and the breach must have caused plaintiff damage. *Daye*, 720 So. 2d at 659; *Barrie v. V.P. Exterminators, Inc.,* 625 So. 2d 1007, 1013-14 (La. 1993).

In their amended complaint, plaintiffs allege:

> Defendants intentionally and/or negligently misrepresented to plaintiffs the purpose for which their confidential customer lists and information assembled by the plaintiffs would be used and examined by defendant, intentionally and/or negligently led plaintiffs to believe and rely upon the reasonable belief that plaintiffs' work, effort, industry and skill in developing each plaintiff's client base would not be misused or usurped by defendants to obtain an unjust advantage from or over plaintiffs . . . .[46]

Although this allegation succinctly states plaintiffs' conclusion, both the complaint and amended complaint lack any factual specificity as to which of the numerous corporate defendants made such

---

[46]Amd. Comp., ¶ 38(a).

alleged misrepresentations, to which plaintiff or plaintiffs such alleged misrepresentations were made, the actual content of any statement by any defendant, or when and where such alleged misrepresentations were made.  As noted above, the sales agreements expressly, clearly and unambiguously notified plaintiffs that any documents generated in connection with plaintiffs' appointment as independent insurance agents were the defendants' property.  In light of that provision, the need for specificity in this case is particularly acute.   The sales agreements place no limitation on defendants' use of any documents generated by plaintiffs in connection with their appointment and, absent any factual allegations of any actual misrepresentation, this Court cannot infer the existence of any of the essential elements of either a fraud or negligent misrepresentation claim from plaintiffs' generalized allegation cited above.

Asserting that they have satisfied Rule 9(b), plaintiffs rely on several paragraphs of the original complaint in which they allege, *inter alia*, that ING met with the AFT in an effort to offer an AFT-endorsed annuity plan, informed plaintiffs that they could not use the AFT endorsement to sell existing annuity plans, and revealed to defendants' in-house agents the identities of plaintiffs' public school employee clients.[47]   Specifically, plaintiffs point to one paragraph of the complaint which reads:

> Sometime in September 2003, the Southeast regional manager of ING, came to New Orleans and met with a group of ING independent agents, including some of the named plaintiffs here, and advised that plaintiffs would no longer be allowed to sell ING and/or Reliastar § 403(b) plans if plaintiffs utilize the AFT endorsement to procure any business in the Orleans Parish School system.[48]

---

[47]*See* Comp., ¶¶  18-23.

[48]*Id.*, ¶ 19.

This excerpt contains no suggestion that any of the regional manager's statements were false.  Nor is there any explanation anywhere in the pleadings as to why any statements or omissions by the regional manager during the alleged meeting were false or misleading.  *See Williams*, 112 F.3d at 179 ("[P]laintiffs must also 'set forth an explanation as to why the statement or omission complained of was false or misleading.' ") (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).   To the contrary, plaintiffs' arguments to this Court make clear that the gravamen of their action is that defendants did, in fact, inform plaintiffs that they could not continue to sell the old ING or Reliastar annuity products which were not AFT-endorsed, that plaintiffs did not want to sell the new AFT-endorsed annuity because they felt that such a product was not suitable for their clients, and that plaintiffs were damaged by defendants' alleged conduct in utilizing in-house agents to sell the AFT-endorsed product to the exclusion of the plaintiffs.  Given that the truth of the regional manager's alleged representations to plaintiffs is assumed in plaintiffs' argument, the above-cited paragraph clearly does not provide even a hint of insight into the factual bases for plaintiffs' misrepresentation claims.  Accordingly, plaintiffs' fraud and/or negligent misrepresentation claims fail for lack of particularity.

D.     *Plaintiffs' Request to Amend*

Plaintiffs request leave to file a second amended complaint should the Court find that their misrepresentation claims are not alleged with particularity.  Citing Fed. R. Civ. P. 15(a), plaintiffs argue that dismissal of a claim is warranted only when a plaintiff has failed to plead with particularity after  being afforded repeated opportunities to do so.

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, the Fifth Circuit

has explicitly held that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003); *S & W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).[49]  Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge."  The good cause requirement for a modification of a scheduling deadline requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  *S & W Enters.*,  315 F.3d at 535 (citation and internal quotation omitted); *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp.2d 845, 851 (E.D. Tex. 2004)(noting that "the good cause showing unambiguously centers on [the mover's] diligence").  Only when the movant demonstrates good cause to modify a scheduling order "will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."  *S & W Enters.*, 315 F.3d at 536.

In defendants' first motion to dismiss, filed on May 5, 2004, defendants moved the Court to dismiss plaintiffs' fraud and negligent misrepresentation claims for failure to plead with particularity in accordance with Fed. R. Civ. P. 9(b).[50]  As this Court has previously noted, plaintiffs' primary response in opposition to defendants' motion to dismiss was to repeatedly request to amend the complaint to cure any deficiencies in the complaint.[51]  Given plaintiffs' right to amend prior to the filing of responsive pleadings, their request to amend the complaint and the fact that defendants' initial motion to dismiss put plaintiffs "on more than adequate notice of defendants' arguments

---

[49]This Court' scheduling order provides that amendments to pleadings "shall be filed no later than March 18, 2005."  Rec. Doc. No. 53.

[50]Rec. Doc. No. 8, at 24.

[51]Rec. Doc. No. 38, at 16.

pertaining to the sufficiency of the complaint," this Court granted plaintiffs an opportunity to cure the asserted deficiencies in their complaint.[52]

In requesting the opportunity to amend, plaintiffs rely only on the liberal standard applicable to amending pleadings pursuant to Rule 15(a) and make no showing of good cause to extend this Court's scheduling order.   Plaintiffs cannot show good cause given that plaintiffs have again failed to allege their claims with any factual specificity notwithstanding their awareness that defendants challenged such claims for failure to plead such claims with particularity in accordance with Rule 9(b).  Accordingly, plaintiffs request to file a second amended complaint must be denied.

VII.    *Unjust Enrichment Pursuant to Louisiana Civil Code Article 2298*

Article 2298 of the Louisiana Civil Code provides in pertinent part:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

In order to successfully invoke an action for unjust enrichment, a plaintiff must satisfy five prerequisites: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and the impoverishment, and (5) no other remedy at law available to the impoverishee.  *Minyard v. Curtis Prods., Inc.,* 205 So. 2d 422, 432 (La. 1967); *Coastal Envtl. Specialists, Inc. v. Chem-Lig Intern., Inc.*, 818 So. 2d 12, 19 (La. App. 1st Cir. 2001).  "The root principle of unjustified enrichment is that the plaintiff suffers an economic detriment for which he should not be responsible, while the

---

[52]*Id.*, at 17.

defendant receives an economic benefit for which he has not paid." *Coastal Envtl.*, 818 So. 2d at 19; *see also Bamburg Steel Bldgs., Inc. v. Lawence Gen. Corp.*, 817 So. 2d 427, 437 (La. App. 2d Cir. 2002) ("Unjust enrichment is founded on the equitable principle that no one should be enriched at the expense of another.").

Accepting plaintiffs' allegations as true, plaintiffs cannot satisfy the second, fourth and fifth prerequisites for asserting an unjust enrichment claim. Plaintiffs' unjust enrichment claim rests on the same facts as plaintiffs' other causes of action, *i.e.*, that defendants were unjustly enriched by being able to use plaintiffs' client lists to solicit the AFT-endorsed annuity product using in-house agents.

With respect to the fourth element, the obvious justification for defendants' conduct is the written sales agreements. The sales agreements, discussed at length above, provide that the client lists turned over to defendants in connection with plaintiffs appointment "are our property, whether or not we paid for them,"[53] and the contract permits defendants to appoint other sales agents in plaintiffs' sales area. "[I]f there is a contract between the parties it serves as a legal cause, an explanation, for the enrichment." *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1994). " '[O]nly the unjust enrichment for which there is no justification in law or *contract* allows equity a role in the adjudication.' " *Id.* (emphasis in original) (quoting *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 122 (La. 1974)); *see also* La. Civ. Code art. 2298 ("The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.").

With respect to the fifth element, plaintiffs cannot show the absence of any remedy at law

---

[53]*Id.*, Exs. 3-8, ¶ 11.

because the obligations of the parties in this regard are addressed by the written sales agreements and defendants' conduct is the subject of plaintiffs' breach of contract claims. *See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So. 2d 569, 572 (La. 1989) ("[T]he existence of a claim on an express or implied contract precludes application of [unjust enrichment], for there does not exist one of the latter's requirements, that there be no other remedy available at law . . . ."); *see also Bethea v. St. Paul Guardian Ins. Co.*, 2003 WL 21105099, at *6 (E.D. La. May 12, 2003) ("First, as there is a contract between plaintiffs and St. Paul, a claim for unjust enrichment does not lie.") (citation omitted); *Jobe v. ATR Mktg., Inc.*, 1998 WL 799236, at *8 (E.D. La. Nov. 13, 1998) ("If [an] obligation was contractual, the remedy of unjust enrichment would be unavailable to the plaintiff."); *Wohlschlaeger v. Fairmont Hotel Co.*, 1995 WL 468305, at *3 (E.D. La. Aug. 2, 1995) ("A claim for unjust enrichment lies only if the Court finds that there is no contract."); *Wright v. Southwest Life Ins. Co.*, 364 F. Supp. 981, 986 (W.D. La. 1972) ("The short answer to plaintiff's claim under the theory of unjust enrichment is that the case is governed not by principles of quasi-contract but by the express terms of the written contract."); *Bamburg Steel Bldgs., Inc. v. Lawrence Gen. Corp.*, 817 So. 2d 427, 438 (La. App. 2d Cir. 2002) ("Initially, we note that where a contract exists, there can be no recovery in quantum meruit.").[54]

Finally, with respect to the second element, impoverishment can be shown "only when the factual circumstances show that the impoverishment was not a result of the plaintiffs' own fault or

---

[54]In finding that plaintiffs cannot show the unavailability of a remedy at law due to the existence of the written sales agreements, the alleged oral contracts, and plaintiffs' breach of contract claims based upon such agreements, the Court notes that whether plaintiffs can succeed in recovering and collecting on their breach of contract claims is not determinative of whether a legal remedy is available. *Coastal Envtl.*, 818 So. 2d at 20; *see also Builders Supply of Ruston, Inc. v. Qualls*, 750 So. 2d 427, 431 (La. App. 2d Cir. 2000) (finding that the materialman's lien statute was an available legal remedy for non-payment for the construction of a home notwithstanding that plaintiff's claim to enforce the lien had prescribed).

negligence *or was not undertaken at [their] own risk*." *Gray v. McCormick*, 663 So. 2d 480, 487

(La. App. 3d Cir. 1995) (emphasis supplied); *see also Bamburg Steel Bldgs.*, 817 So. 2d at 439

(finding that plaintiff who knowingly and willingly entered into a private contract could not recover

on the theory of unjust enrichment when the plaintiff should have anticipated the risk of loss and the

plaintiff acted in such a way that caused both its alleged impoverishment and whatever enrichment

the defendant may have received); *Tandy v. Pecan Shoppe of Minden, Inc.*, 785 So. 2d 111, 117-18

(La. App. 2d Cir. 2001) (finding that a plaintiff who voluntarily acted in such a way that caused both

his alleged impoverishment and whatever enrichment defendant may have received cannot show

unjust enrichment).  In this case, plaintiffs have alleged that they voluntarily provided defendants

with lists of their clients in connection with their agency relationship with defendants in the face of

a written contract which provides that such documents belong to defendants and contains no

restrictions on the use of such lists.  These allegations preclude plaintiffs from showing an

impoverishment.  Accordingly, for the reasons stated, plaintiffs' allegations and the terms of the

written contract preclude recovery on an unjust enrichment theory.

VIII.  *Detrimental Reliance*

Plaintiffs' claim for detrimental reliance is governed by La. Civ. Code art. 1967.  Article

1967 provides:

> A party may be obligated by a promise when he knew or should have
> known that the promise would induce the other party to rely on it to
> his detriment and the other party was reasonable in so relying.
> Recovery may be limited to the expenses incurred or the damages
> suffered as a result of the promisee's reliance on the promise.
> Reliance on a gratuitous promise made without required formalities
> is not reasonable.

The essential elements of a detrimental reliance claim pursuant to article 1967 are: (1) a promise

43

made (2) by the defendant who knows or has reason to know (3) that the promise will induce the plaintiff to rely (4) to his detriment (5) provided the reliance is reasonable. *See Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1329 (5th Cir. 1994) (citing *Morris v. Peoples Bank & Trust Co.*, 580 So. 2d 1029, 1033-34 (La. App. 3d Cir. 1991). Pursuant to article 1967 "a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment." *Morris*, 580 So. 2d at 1033. Louisiana cases make clear that recovery for detrimental reliance is not limited to oral promises; the detrimental reliance doctrine applies to representations made by word or by conduct. *Babkow v. Morris Bart, P.L.C.*, 726 So. 2d 423, 427 (La. App. 4th Cir. 1998). "The detrimental reliance doctrine is 'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.' " *Id.*

Relying on the factual allegations discussed above and contained in paragraphs seven through twenty-three of the complaint, plaintiffs allege:

> Plaintiffs . . . each reasonably relied on defendants not to misuse his or her confidential client lists and that the damages plaintiffs have sustained and/or will sustain and/or will continue to sustain are a direct result of plaintiffs' reasonable reliance on defendants' promises and defendants' breach thereby.[55]

The amended complaint contains a similar allegation alleged in connection with plaintiffs' fraud and misrepresentation claim.[56] Other than these two allegations, the complaint contains no factual allegations concerning any promise, representation, admission, or prior conduct on defendants' part with respect to the use of client information which plaintiffs admit was voluntarily given to defendants. Although plaintiffs argue in their brief that defendants "impliedly promised" that the

---

[55]Comp., ¶ 33.

[56]*See* Amd. Comp., ¶ 38(a), set forth in full above in the text of this opinion.

customer lists would be used only for "legitimate" purposes, there is no hint in the pleadings how such an implied promise was manifested by conduct or by word.

Although this Court must construe the factual allegations in the complaint liberally, plaintiffs must plead specific facts supporting their claim of a promise made by defendants, not mere conclusory allegations. *See Guidry*, 954 F.2d at 281. This Court will not accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Trust Co.*, 313 F.3d at 312. Moreover, "this court cannot assume facts that were not alleged." *Ratcliff v. Southern C/P/D Inc.*, 2003 WL 1529539, *1 (5th Cir. 2003) (unpublished) (noting that a general allegation of a discriminatory policy is insufficient to support a civil rights claim absent factual allegations which show discriminatory conduct) (citing *Robertson v. Plano City of Texas,* 70 F.3d 21, 23 (5th Cir.1995)). Without any factual allegations permitting any inference that such a representation by word or conduct was made by defendants, plaintiffs cannot maintain an action for detrimental reliance.

IX.    *Motion for Judgment on the Pleadings Filed on Behalf of Plaintiff, Joseph W. Pitts*

On March 7, 2005, defendants answered plaintiffs' amended complaint and filed counterclaims against all of the plaintiffs in this action.[57]   On June 24, 2005, defendants-in-counterclaim, Joseph W. Pitts and Joseph W. Pitts, CLU (collectively, "Pitts") moved for a judgment on the pleadings on the ground that defendants' counterclaim fails to state claims for breach of contract or breach of the duty of good faith against Pitts.[58]

The basis for defendants' counterclaim is that plaintiffs breached the written sales agreements and the duty of good faith by attempting to prevent the introduction of the AFT-endorsed annuity

---

[57]Rec. Doc. No. 54, Answer and counterclaims (herinafter, "Counterclaims").

[58]Rec. Doc. No. 89.

product into the New Orleans market. Defendants allege, *inter alia,* that in October, 2003, plaintiffs complained to the Louisiana Department of Insurance ("DOI") concerning the introduction of the AFT-endorsed annuity.[59]  After the DOI found that the AFT-endorsed product did not violate any provision of the Louisiana Insurance Code, plaintiffs again complained to the DOI in the spring of 2004.[60]  Additionally, the counterclaim alleges that plaintiff, Sabadie, acting on behalf of all the plaintiffs, met with the Superintendent of the Jefferson Parish School District, disparaged the AFT-endorsed product and incorrectly informed the Jefferson Parish Superintendent that defendants' sales manager was under criminal investigation.[61]

Pitts does not contend that the allegations in the complaint fail to contain allegations which would support a claim for breach of contract or breach of the duty of good faith.  Pitts does not challenge the legal sufficiency of the allegations within the context of the law governing such claims.  Instead, Pitts primary argument is that the allegations fail to state a claim against Pitts due to the defendants' reference to all of the plaintiffs collectively and the attribution of certain conduct undertaken by Sabadie to the other plaintiffs.  Pitts contends that defendants' failure to state any individualized allegations against Pitts is fatal to defendants' counterclaim against Pitts.

As noted above, the Court will not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* 355 U.S. at 45-46, 78 S.Ct. at 102.  That is, a court should not dismiss a claim "unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove

---

[59]Counterclaims, ¶ 27.

[60]*Id.*, ¶ 28.

[61]*Id.*, ¶ 33.

46

consistent with the allegations in the complaint." *Jones*, 188 F.3d at 324.  However, "a plaintiff must plead specific facts, not mere conclusory allegations. . . .'" *Guidry*, 954 F.2d at 281 (citation omitted).

Taking the allegations in the counterclaim as true, this Court cannot conclude at this stage of the proceedings that Pitts was not part of the alleged group of plaintiffs who complained to the Department of Insurance or that plaintiff, Sabadie, was not acting on Pitts' behalf as alleged.  The fact that the counterclaim alleges certain conduct as to some of the plaintiffs individually does not undermine those allegations which refer to the plaintiffs collectively, allegations which this Court must accept as true.  Both parties raise factual arguments in their briefs on the issue of Pitts' involvement in the alleged activities, arguments more properly addressed in the context of a motion for summary judgment.  As Pitts does not raise any serious argument that these allegations, if true, would not support defendants' claims of breach of contract and breach of the duty of good faith, the Court need not reach the merits of defendants' counterclaim against Pitts in order to resolve the present motion.  Because the allegations in defendants' counterclaim cannot be read to definitively exclude Pitts from the conduct alleged, Pitts is not entitled to dismissal of defendants' counterclaim at this stage of the proceedings.

X.      *Conclusion*

Accordingly, for the above and foregoing reasons,

**IT IS ORDERED** that the motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), filed on behalf of defendants, Northern Life Insurance Company, ING Reliastar Life Insurance Company, ING Life Insurance and Annuity Company, and ING Financial Advisors, LLC.(Rec. Doc. No. 57)  is **GRANTED IN PART AND DENIED IN PART** to the extent it seeks

dismissal of plaintiffs' claims.  With the exception of plaintiffs' claims for breach of the alleged oral contracts, plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), filed on behalf of defendant-in-counterclaim, Joseph W. Pitts and Joseph W. Pitts, CLU (Rec. Doc. No. 89), is **DENIED.**

New Orleans, Louisiana, August ___12th___, 2005.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

48